UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PURE PAYMENT INC<br><br>      Plaintiff,<br><br>  v.<br><br>AFFIRM, INC.<br><br>      Defendant. | Civil Action No.<br><br>**COMPLAINT** |

Plaintiff, Pure Payment, Inc., by and through its attorneys, alleges as follows:

## NATURE OF ACTION

1. This is an action for violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; for violations of the common law of the State of New York arising from unfair competition and trademark and service mark infringement; and for violation of Section 360-1 of the New York General Business Law.

## THE PARTIES

2. Plaintiff, Pure Payment, Inc. ("Pure Payment") is a New Jersey corporation organized and existing under the laws of New Jersey. Since its founding in 2012, PayBright implemented its concept "merchant services, done right" and committed itself to fair and ethical standards with every merchant through transparency, simplicity, and affordability. PayBright has worked diligently to build successful relationships with thousands of merchants spanning across the entire US, Hawaii, Puerto Rico and the US Virgin Islands.

3. Defendant, Affirm, Inc, ("Affirm") is a corporation organized under the laws of the state of Delaware and is legally authorized as a foreign corporation to do business in the state of New York.

1

4. Affirm conducts business in the state of New York on a regular and ongoing basis and offers services to consumers in the state New York. Affirm lists a business address at 1140 Broadway, New York, New York,10001.

5. Affirm also lists a principal place of business at 650 California Street, FL 12, San Francisco, California, 94108.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over Pure Payment's federal claims and the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), and 15 U.S.C. §1121. In addition, this Court has supplemental jurisdiction over Pure Payment's state law claims under 28 U.S.C. § 1367.

7. Furthermore, upon information and belief, this Court also has diversity jurisdiction over this civil action, as diversity of citizenship exists amongst the parties and the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00).

8. Upon information and belief, this Court has personal jurisdiction over Affirm because Affirm has transacted business, regularly does business, and supplies services in the State of New York and in this District. Affirm also lists a business address at 1140 Broadway, New York, New York, 10001. Therefore, it should reasonably expect its acts to have legal consequences within the State of New York and this District. Additionally, as alleged herein this civil action arises out of Affirm's marketing, offering, and sale of Infringing Services in the State of New York and in this District.

9.      Venue is proper in this district under 28 U.S.C. §§ 1391 because a substantial part of the ongoing events giving rise to the claims occurred in this judicial district and Affirm is subject to personal jurisdiction within this judicial district.

## BACKGROUND FACTS

10.     Pure Payment is the exclusive owner throughout the United States of the following federally registered PAYBRIGHT mark and of U.S. common law rights in its PAYBRIGHT mark with first use at least as early as February 09, 2017 (collectively, the "PAYBRIGHT Mark").  Attached and incorporated herein by reference as Exhibit A is a true and accurate copy of Pure Payment's U.S. Certificate of Registration.

11.     U.S. Registration No. 5197325 for the PAYBRIGHT Mark is valid and enforceable and is used in association with merchant banking services; merchant services, namely, payment transaction processing services; credit card payment processing services in class 036.

12.     Pure Payment's mark has obtained incontestable status due to its long and continuous use.

13.     Pure Payment entered into a non-exclusive license agreement on December 14, 2020 with Pay Bright, Inc., which provided for use of the mark PAYBRIGHT in association with services offered by licensee in the United States.  The agreement provided for automatic renewal after a two-year term, however, Pay Bright, Inc. refused to pay the licensing fee due in December, 2022.  Attached and incorporated herein by reference as Exhibit B is a true and accurate copy of the license agreement.

14.     Pure Payment, Inc. initially put licensee, Pay Bright, Inc., on notice of breach for non-payment under the terms of the license agreement in December 2022.  At that time, the PAYBRIGHT Mark was being used in association with services offered by Affirm, Inc., which

acquired Pay Bright in January 2021.  The notice also demanded that Pure Bright, Inc. cease all infringing use of the PAYBRIGHT mark.

15.     Affirm, Inc. responded on behalf of itself and Pay Bright to Pure Payment's notice of breach and infringement, unfortunately, settlement discussions were unsuccessful and communications between the parties ended in early 2023.

16.     Affirm's response to Pure Payment's demand letter asserted that it was no longer using the PAYBRIGHT Mark and considered the license agreement terminated or invalid. Affirm refused to pay the annual fee that was due and failed to cure the material breach of the license agreement.

17.     Despite Affirm's representation of non-use of the mark, Affirm, Inc., and its affiliates continued using the mark in association with merchant services and payment transaction services to solicit a wide array of business customers who offer goods and services to consumers in the United States and in New York via online websites and in physical stores. Examples are attached and incorporated herein as Exhibit C.

18.     Affirm uses the mark PAYBRIGHT in association with merchant and payment transaction services, namely, it's "buy now and pay later services" that are identical and closely related to Pure Payment's services, namely, merchant services, payment transaction services, and credit card payment processing services.

19.      Affirm is using the markAYBRIGHT in association with services offered to merchants in the United States who operate in market channels where Pure Payment's services are offered.

20.     Pure Payment has become a trusted source for merchant banking services, payment transaction processing services and credit card payment processing services and has accrued significant goodwill and consumer recognition in the PAYBRIGHT trademark working with

over 10,000 merchants to provide consumer transaction services. Its significant efforts have been recognized by Inc. 5000, which listed it as one of the fastest growing private companies, for the last two years.

21. Consumer confusion caused by Affirm's infringing use of the PAYBRIGHT Mark has been pervasive among consumers and within the trade industry. Some examples of actual confusion as to the origin of the services offered under the PAYBRIGHT mark are attached and incorporated herein as Exhibit D.

22. Affirm's use of the mark is causing irreparable harm to Pure Payment Inc.'s reputation. Examples of consumer complaints arising from use of Affirm's services, offered under the PAYBRIGHT mark, that are being erroneously attributed to Pure Payment are attached and incorporated herein as Exhibit E.

23. Upon information and belief, the Infringing Conduct is continuous and taking place in New York State, including in this District, and throughout the United States.

24. Affirm is well aware of the PAYBRIGHT mark and Pure Payment's exclusive rights in the PAYBRIGHT Mark throughout the United States.

25. Affirm has continued to make commercial use of the infringing PAYBRIGHT mark despite being on notice of Pure Payment's rights and despite Pure Payment's good faith efforts to resolve this matter without initiating federal litigation.

**FIRST CAUSE OF ACTION**
**(Registered Trademark and Service Mark Infringement)**

26. Pure Payment repeats and incorporates by reference each of the averments contained in paragraphs 1 through 25 of this complaint with the same force and effect.

27. Pure Payment owns all rights, title and interest in the PAYBRIGHT Mark, which it has used continuously in U.S. commerce since at least as early as February 09, 2023.

28. Pure Payment has never authorized Affirm to market and/or offer services or goods bearing the PAYBRIGHT Mark.

29. Upon information and belief, Affirm's on-going acts have been done willfully and intentionally with full knowledge of Pure Payment's prior rights in the PAYBRIGHT Mark and unlawfully misappropriated Pure Payment's valuable rights in the PAYBRIGHT Mark.

30. Affirm's unauthorized use in commerce of the PAYBRIGHT Mark infringes Pure Payment's rights in the mark and violates 15 U.S.C. § 1114 because it renders Affirm's services confusingly similar to Pure Payment's PAYBRIGHT Mark and creates the erroneous impression in consumers' minds that Affirm's services are approved, sponsored, endorsed, developed, or are licensed by, or are in some way affiliated with Pure Payment and the PAYBRIGHT Mark.

31. Affirm's infringing actions have caused and are likely to cause confusion as to the source and origin of services offered under the PAYBRIGHT Mark.

32. Pure Payment has no adequate remedy at law and is suffering irreparable harm and damages as a result of the wrongful acts of Affirm.

33. All of Affirm's acts are "exceptional" and Pure Payment is entitled to treble damages and attorney's fees under 15 U.S.C. § 1117.

**SECOND CAUSE OF ACTION**
**(Injury to Business Reputation and Dilution)**

34. Pure Payment repeats and incorporates herein by reference each of the averments contained in paragraphs 1 through 33 of this complaint with the same force and effect.

35. The practices and acts of Affirm set forth above are likely to dilute the distinctive quality of Pure Payment's PAYBRIGHT Mark in violation of Section 360-1 of the New York General Business Law. Consumer complaints to the Better Business Bureau and via social media platforms are demonstrative of the harm being cause to Pure Payment's business reputation.

36. These acts of Affirm are without the permission, license or consent of Pure Payment and, unless enjoined by this Court, Affirm will continue these practices and acts, thereby harming Pure Payment's business reputation and causing Pure Payment immediate and irreparable injury.

37. Pure Payment has no adequate remedy at law and is suffering irreparable harm and damages as a result of the wrongful acts of Affirm in an amount in excess of seventy-five thousand dollars ($75,000.00) to be determined at trial.

## THIRD CAUSE OF ACTION
### (Common Law Trademark and Service Mark Infringement)

38. Pure Payment repeats and incorporates herein by reference each of the averments contained in paragraphs 1 through 37 of this complaint with the same force and effect.

39. Affirm's acts constitute trademark and service mark infringement under New York common law.

40. Pure Payment is without adequate remedy at law, as Affirm's acts have caused Pure Payment irreparable harm to its business reputation and goodwill in the business community.

41. The marketing, distribution and sale of the Infringing Services by Affirm are without any permission, license or other authorization from Pure Payment. The unauthorized Infringing Services are being marketed, distributed and sold in interstate commerce.

42. Pure Payment has no adequate remedy at law and is suffering irreparable harm and damage as a result of Affirm's actions in an amount in excess of seventy-five thousand dollars ($75,000.00) to be determined at trial.

43. Upon information and belief, Affirm has obtained gains, profits and advantages as a result of their wrongful acts in an amount in excess of seventy-five thousand dollars ($75,000.00) to be determined at trial.

## FOURTH CAUSE OF ACTION

**BREACH OF LICENSE AGREEMENT**

44. Pure Payment repeats and incorporates herein by reference each of the averments contained in paragraphs 1 through 43 of this complaint with the same force and effect.

45. The License Agreement is a valid and binding contract.

46. Pure Payment Inc. has fulfilled all of its obligations under the License Agreement.

47. The Licensee, Affirm, has failed to pay Pure Payment, Inc. the annual licensing fee which automatically renewed under the terms of the Agreement on December 14, 2022 yet continued using the PAYBRIGHT Mark in association with its services.

48. The failure of Affirm to pay Pure Payment the required licensing fee under the explicit terms of the License Agreement constitutes a material breach of the License Agreement.

49. Despite the Licensee's failure to make the required payment, Pure Payment had remained willing and able to continue to perform all its obligations under the License Agreement.

50. Had the Licensee properly performed its obligations pursuant to the License Agreement, Pure Payment would have received, the additional minimum sum of $102,850.00

51. By virtue of the Licensee's breaches of its obligations pursuant to the License Agreement, Pure Payment has sustained damages in a sum to be determined at trial but believed to exceed $102,850.00 plus interest.

**PRAYER FOR RELIEF**

WHEREFORE, Pure Payment requests judgment in its favor against Affirm and each of them as follows:

A. An injunction permanently enjoining and restraining Affirm, their agents, servants, employees, successors, assigns, subsidiaries, related companies, parent companies, licensees and all persons in active concert of participation with them:

  1. From marketing, offering, selling or distributing services bearing the mark PAYBRIGHT or any confusingly similar variation(s) thereof;

  2. From engaging in deceptive trade practices or acts in the conduct of Affirm's business by means of offering services in association with the PAYBRIGHT Mark;

B. Directing Affirm to remove all references to any PAYBRIGHT Mark and/or any confusingly similar variation(s) thereof contained in any advertising and/or marketing materials published by Affirm, including all social media posts.

C. Directing Affirm to account to Pure Payment for all profits resulting from Affirm's Infringing Conduct;

D. Awarding Pure Payment its damages from Affirm's unlawful and wrongful acts;

E. Awarding Pure Payment three (3) times the amount of Pure Payment's damages or Affirm's profits, whichever is greater;

F. Awarding Pure Payment the cost and expenses incurred in connection with this action, as well as its reasonable attorneys' fees.

G. Awarding Pure Payment such other and further relief as the Court may deem just and proper; and

Date:  October 9, 2023        Respectfully Submitted,

              /s/Kathryn G. Kent
              Kathryn G. Kent
              Gerben Perrott, PLLC
              1050 Connecticut Ave NW, Suite 500
              Washington, DC 20036
              VT #4455
              kkent@gerbenlawfirm.com
              Attorney for Plaintiff